UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DENNIS RAY SPENCER,

        Petitioner,                  Case No. 1:07-cv-852

v.                                         Honorable Janet T. Neff

CARMEN PALMER,

        Respondent.
_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner is serving a term of forty months to fifteen years, imposed by the Saginaw County Circuit Court on June 7, 2005, after a jury convicted Petitioner of one count of third-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520d(1)(c). In his amended *pro se* petition (docket #4), Petitioner raises two grounds for relief, as follows:

    I.      MY SENTENCING GUIDELINES WERE NOT SCORED PROPERL[]Y BECAUSE THE JUDGE USED FACTORS NOT PRESENTED TO THE JURY.

    II.     INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILURE TO FULLY INVESTIGATE EXCULPATORY EVIDENCE PRIOR TO TRIAL.

Respondent has filed an answer to the petition (docket #9) stating that the grounds are without merit or are unexhausted. Upon review and applying the AEDPA standards, I find that Petitioner's claims are without merit. Accordingly, I recommend that the petition be denied.

## Procedural History

### A. Trial Court Proceedings

Petitioner was accused of the sexual penetration of Raquel Huff, a mentally impaired sixteen-year-old girl who was living at Petitioner's home with her mother. Petitioner was charged with two counts of third-degree criminal sexual conduct, asserting vaginal penetration (Count I) and anal penetration (Count II). Petitioner was tried before a jury on April 14 through 21, 2005.[1] At the conclusion of trial, on April 21, 2005, the jury found Petitioner guilty of Count I, but not guilty of Count II. (Tr. V, 49-50.) On June 6, 2005, Petitioner was sentenced to serve a term of forty months to fifteen years. (Sentencing Transcript, 8, docket #18.)

### B. Direct Appeal

Petitioner appealed as of right to the Michigan Court of Appeals. His brief, which was filed by counsel on October 6, 1995, raised the following claim, which corresponds with Petitioner's first ground for habeas corpus relief:

> DEFENDANT WAS DEPRIVED OF HIS AMS V AND XIV RIGHTS OF DUE PROCESS WHEN HIS SENTENCING GUIDELINES WERE INCORRECTLY SCORED AS A CONSEQUENCE OF WHICH THE TRIAL COURT DEPARTED UPWARDS WITHOUT THE REQUISITE STATEMENT OF REASONS.

(*See* Def.-Appellant's Br. on Appeal, docket #19.) Petitioner attempted to file a supplemental *pro se* brief raising additional claims, but his motion was denied by the Michigan Court of Appeals on

---

[1]The trial transcripts will be referred to as follows:

Tr. I - Volume I, April 14, 2005
Tr. II - Volume II, April 15, 2005
Tr. III - Volume III, April 19, 2005
Tr. IV - Volume IV, April 20, 2005
Tr. V - Volume V, April 21, 2005

January 11, 2007. By unpublished opinion issued on January 30, 2007, the Michigan Court of Appeals affirmed Petitioner's conviction and sentence. (*See* 1/30/07 Mich. Ct. App. Opinion (MCOA Op.), docket #19.)

Petitioner filed a *pro per* application for leave to appeal to the Michigan Supreme Court. He raised the same sentencing claim raised before and rejected by the Michigan Court of Appeals. By order entered May 30, 2007, the Michigan Supreme Court denied Petitioner's application for leave to appeal because it was not persuaded that the questions presented should be reviewed. (*See* 5/30/07 Mich. Ord., docket #20.)

## **Standard of Review**

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and

not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). The inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001).

A decision of the state court may only be overturned if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result; (3) it identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the facts of the case; or (4) it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend a principle to a context where it should apply. *Bailey*, 271 F.3d at 655 (citing *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 410.

Where the state court has not articulated its reasoning, the federal courts are obligated to conduct an independent review to determine if the state court's result is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the

facts in light of the evidence presented. *See Harris*, 212 F.3d at 943; *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003). Where the circumstances suggest that the state court actually considered the issue, the review is not *de novo*. *Onifer*, 255 F.3d at 316. The review remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *Harris*, 212 F.3d at 943. However, the Sixth Circuit has clarified that where the state court clearly did not address the merits of a claim, "there are simply no results, let alone reasoning, to which [the] court can defer." In such circumstances, the court conducts *de novo* review. *McKenzie*, 326 F.3d at 727 (limiting *Harris* to those circumstances in which a result exists to which the federal court may defer); *see also Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

## Discussion

### I. Sentencing Guideline Scoring

Petitioner claims that the trial court improperly scored the sentencing guidelines. Specifically, he contends that the trial court improperly scored ten points for Offense Variable (OV) 3 (physical injury to victim) because there was no evidence that the victim sustained injuries requiring medical treatment. Petitioner further claims that the trial court improperly scored 25 points for OV 11 (sexual penetration) when the offense for which he was convicted could not be counted and he was acquitted of the second count of CSC III. Petitioner further contends that in scoring the offense variables, the trial court considered facts that were not found by a jury beyond a reasonable doubt in violation of *Blakely v. Washington*, 542 U.S. 296 (2004). Petitioner argues that if the

guidelines had been properly scored, the guideline range would have been twelve to twenty-four months, rather than twenty-four to forty months, which would have resulted in shorter minimum sentence.

The Michigan Court of Appeals found that the trial court erred in scoring OV 3, but that the error was harmless because it had no effect on the proper minimum sentencing range. The court explained:

> This Court reviews a sentencing court's scoring of a defendant's guidelines to determine whether the sentencing court properly exercised its discretion and whether the evidence adequately supported a particular score. *People v McLaughlin*, 258 Mich App 635, 671; 672 NW2d 860 (2003). Although defendant has framed his issue as one of departure from the sentencing guidelines, this issue is more accurately stated as one of improper scoring. A sentencing court has discretion with respect to the scoring of offense variables, provided that evidence of record supports a particular score. *People v Hornsby*, 251 Mich App 462, 468; 650 NW2d 700 (2002). "'Scoring decisions for which there is any evidence in support will be upheld.'" *Id.*, quoting *People v Elliott*, 215 Mich App 259, 260; 544 NW2d 748 (1996).
>
> Defendant first contends that OV 3 was erroneously scored at 10 points, and argues that there was no evidence to indicate the victim required any medical treatment. Offense variable 3 addresses "physical injury to a victim." MCL 777.33. The court is to score OV 3 at 10 points if "[b]odily injury requiring medical treatment occurred to a victim," and at 5 points if "[b]odily injury not requiring medical treatment occurred to a victim." MCL 777.33(1)(d) and (e). The term "requiring medical treatment" refers to "the necessity for treatment and not the victim's success in obtaining treatment." MCL 777.33(3).
>
> The evidence does not adequately support a score of 10 points for OV 3 in this case. Although the testimony suggested some injury to the victim, there was no evidence of any treatment provided to the victim and no evidence that any treatment was necessary. Although success in receiving treatment is not necessary to score OV 3 at 10 points, evidentiary support for a score of 10 points is completely lacking. Accordingly, we conclude that the trial court abused its discretion in scoring OV 3, which should have been scored at 5 points for injuries not requiring medical treatment.
>
> Defendant also contends that OV 11 was erroneously scored at 50 points. [fn] Because a second count of criminal sexual conduct was dismissed, and because no points should have been scored for the penetration that formed the basis of the

conviction, defendant argues that OV 11 should have been scored at zero points. We disagree.

Offense variable 11 addresses criminal sexual penetration. MCL 777.41. Under OV 11, the trial court should score 50 points if two or more criminal sexual penetrations occurred, 25 if one criminal sexual penetration occurred, and zero if no criminal sexual penetration occurred. Additionally, MCL 777.41(2)(c) instructs that no points should be scored for the penetration that forms the basis of a first-degree or third-degree criminal sexual conduct conviction.

Contrary to defendant's assertions, the United States Supreme Court decision in *Blakely v Washington*, 542 US 296; 124 S Ct 2531; 159 L Ed 2d 403 (2004), does not apply to Michigan's indeterminate sentencing scheme. *People v Drohan*, 475 Mich 140, 159-160; 715 NW2d 778 (2006). In Michigan, a fact can be established for the purpose of guidelines calculations by a mere preponderance of the evidence, and need not be established at trial beyond a reasonable doubt. *People v Perez*, 255 Mich App 703, 712; 662 NW2d 446, vacated in part on other grounds 469 Mich 415 (2003). The fact that a defendant was not convicted by proof beyond a reasonable doubt does not mean that he cannot be found by a preponderance of the evidence to have committed the same conduct. *People v Harris*, 190 Mich App 652, 663; 476 NW2d 767 (1991).

We find that there was sufficient evidence to support the trial court's score of OV 11 at 25 points. The victim's mother testified that the victim told her that defendant put his "ding-a-ling in her in the front and back." The victim's mother found stool around the victim's anal area, which she indicated was unusual. Additionally, the victim testified that defendant put his "ding-a-ling" in her. Specifically, the victim indicated that defendant put his "ding-a-ling" in her front part where "you go to the bathroom," and in her back part "where you go poop." Thus, we conclude that a score of 25 was proper because it does not include points for the vaginal penetration forming the basis of defendant's conviction, but does account for an anal penetration, which was supported by a preponderance of the evidence.

Where a court has abused its discretion in scoring one or more offense variables, but reduction of the score would not alter the total offense variable score so as to change the level at which defendant was ultimately placed in calculating the guidelines range, the error is harmless and remand for resentencing is not required. *People v Johnson*, 202 Mich App 281, 290, 292; 508 NW2d 509 (1993). In the present case, defendant's total offense variable score, including the error, was 55 points. Defendant's total offense variable score as reduced by correction of the five-point scoring error would be 50 points. Third-degree criminal sexual conduct is a Class B offense, MCL 777.16y, and defendant's Prior Record Variable level is A. Pursuant to MCL 777.63, total offense variable scores between 50 and 74 points constitute the same level for calculating the guidelines range. Therefore, reduction

of defendant's score from 55 to 50 would not alter defendant's total offense variable score. The error was harmless, defendant's sentence is within the appropriate range, and remand is not required.

> fn. Defendant contends that the trial court scored OV 11 at 50 points. Although the sentencing information report indicates a score of 50 points for OV 11, the sentencing transcript reveals that the trial court actually scored OV 11 at 25 points.

(MCOA Op. 1-3.)

Claims concerning the improper scoring of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief); *Cheatham v. Hosey*, No. 93-1319, 1993 WL 478854, at *2 (6th Cir. Nov. 19, 1993) (departure from sentencing guidelines is an issue of state law, and, thus, not cognizable in federal habeas review); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (the sentencing guidelines establish only rules of state law). There is no constitutional right to individualized sentencing. *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Moreover, a criminal defendant has "no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004); *accord Lovely v. Jackson*, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004); *Thomas v. Foltz*, 654 F. Supp. 105, 106-07 (E.D. Mich. 1987).

Although state law errors generally are not reviewable in a federal habeas proceeding, an alleged violation of state law "could, potentially, 'be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment.'" *Koras v.*

*Robinson,* 123 F. App'x 207, 213 (6th Cir. Feb. 15, 2005) (citing *Bowling v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003)). *See also Doyle*, 347 F. Supp. 2d at 485 (a habeas court "will not set aside, on allegations of unfairness or an abuse of discretion, terms of a sentence that is within state statutory limits unless the sentence is so disproportionate to the crime as to be completely arbitrary and shocking.") (citation omitted). A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Koras,* 123 F. App'x at 213 (quoting *Roberts v. United States,* 445 U.S. 552, 556 (1980)); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984). *Koras,* 123 F. App'x at 213 (quoting *United States v. Stevens,* 851 F.2d 140, 143 (6th Cir. 1988)). A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 444, 447.

Petitioner's sentence clearly was not arbitrary or shocking, nor was it materially affected by any error committed by the trial court. While the Michigan Court of Appeals found the trial court erred by scoring ten points instead of five points for OV 3, the error was harmless because the five-point reduction had no effect on the proper minimum sentencing range. With regard to OV 11, Petitioner contends that the trial court could not count the alleged anal penetration charged in Count II because he was acquitted of that charge. However, as discussed by the Michigan Court of Appeals, a fact used for purposes of scoring the sentencing guidelines need only be supported by a

preponderance of the evidence, which is a lower evidentiary standard than the reasonable doubt standard required for a criminal conviction. *See People v. Osantowski*, 748 N.W.2d 799, 803 (Mich. 2008). As a result, "situations may arise wherein although the factfinder declined to find a fact proven beyond a reasonable doubt for purposes of conviction, the same fact may be found by a preponderance of the evidence for purposes of sentencing." *People v. Ratkov* (After Remand), 505 N.W.2d 886, 888 (Mich. Ct. App. 1993). This is such a situation. The Michigan Court of Appeals found sufficient evidence on the record, in the form of witness testimony, to support the trial court's inclusion in sentencing of the second charge of CSC III by a preponderance of the evidence, even though the jury acquitted defendant of that charge.[2] Consequently, Petitioner's sentence falls far short of the type of egregious circumstances that would implicate the Due Process Clause.

Furthermore, as discussed by the Michigan Court of Appeals, Petitioner's sentence does not violate the Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296 (2004). *Blakely* concerned the State of Washington's determinate sentencing system, which allowed a trial judge to elevate the maximum sentence permitted by law on the basis of facts not found by the jury but by the judge. Applying the Washington mandatory sentencing guidelines, the trial judge found facts that increased the maximum sentence faced by the defendant. The Supreme Court found that this scheme offended the Sixth Amendment, because any fact that increases or enhances a penalty for the crime beyond the prescribed statutory maximum for the offense must be submitted to the jury

---

[2]Petitioner does not challenge the factual findings of the Michigan Court of Appeals, which are entitled to a presumption of correctness. The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656.

and proven beyond a reasonable doubt. *Blakely,* 542 U.S. at 301 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).

Unlike the State of Washington's determinate sentencing system, the State of Michigan has an indeterminate sentencing system in which the defendant is given a sentence with a minimum and a maximum term. The maximum sentence is not determined by the trial judge, but is set by law. *See People v. Drohan,* 715 N.W.2d 778, 789-92 (Mich. 2006) (citing MICH. COMP. LAWS § 769.8). Only the minimum sentence is based on the applicable sentencing guideline range. *Id.*; *and see People v. Babcock*, 666 N.W.2d 231, 237 n.7 (Mich. 2003) (citing MICH. COMP. LAWS § 769.34(2)). Therefore, under Michigan law, the trial judge sets the minimum sentence (within a certain range), but can never exceed the maximum sentence. *See Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009) (*Apprendi* line of cases does not apply to Michigan's indeterminate sentencing scheme because judicial factfinding affects only the minimum sentence); *Drohan,* 715 N.W.2d at 789.

Because the trial court can never exceed the maximum sentence set by statute, Michigan's indeterminate sentencing scheme, unlike the determinate sentencing scheme at issue in *Blakely*, does not infringe on the province of the finder of fact, and, thus, does not run afoul of *Blakely*. *Blakely,* 542 U.S. at 304-05, 308-09. The trial court in the present case sentenced Petitioner well within the limits of Michigan's indeterminate sentencing scheme; it did not violate his Sixth Amendment rights. *See Chontos*, 585 F.3d at 1002; *Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007) (affirming district court's dismissal of prisoner's claim under *Blakely v. Washington* because it does not apply to Michigan's indeterminate sentencing scheme). Petitioner, therefore, is not entitled to habeas corpus relief arising from the trial court's scoring of the sentencing guidelines.

II. **Ineffective Assistance of Counsel**

Petitioner claims that trial counsel's failure to investigate whether the prosecutor could lay a proper foundation for the admission of the DNA evidence and whether the DNA testing was properly done constituted ineffective assistance of counsel.[3] Because the Michigan courts did not consider Petitioner's claim, this Court must conduct de novo review. *See McKenzie*, 326 F.3d at 727.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions

---

[3]Before the court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *See O'Sullivan*, 526 U.S. at 842. To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995); *Silverburg v. Evitts*, 993 F.2d 124, 126 (6th Cir. 1993). While Petitioner claims that he attempted to raise his claim of ineffective assistance of counsel in a supplemental brief in the Michigan Court of Appeals, the court of appeals denied his motion to file the supplemental brief. Consequently, his claim was not "fairly presented" in the Michigan Court of Appeals. In addition, Petitioner did not present the claim in the Michigan Supreme Court. Because Petitioner did not present his claim of ineffective assistance of counsel at each level of the Michigan appellate courts, he fails to satisfy the exhaustion requirement. Nevertheless, the Court may deny the petition on the merits notwithstanding Petitioner's failure to exhaust his state court remedies. *See* 28 U.S.C. § 2254(b)(2).

were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The DNA evidence at issue in this case was found on the interior crotch panel of the victim's underwear. The nurse examiner who conducted the rape examination on the victim testified that she collected the victim's underwear and placed them in a bag. (Tr. III, 122.) Officer Sarah McKether testified that she collected the rape kit and the underwear from the hospital, labeled them and placed them into evidence to be sent to the lab. (Tr. III, 93-96.) McKether also collected a black fitted bed sheet, a multi-colored bed sheet, a bedspread and pajamas from the victim's home and placed them in evidence. (Tr. III, 96-97.) Forensic scientist Kyle Hoskins examined the contents of the rape kit, as well as the underwear, pajamas, bed sheets and bedspread. (Tr. IV, 13-15.) Hoskins found the presence of semen on the interior crotch panel of the underwear, the black fitted bed sheet and the multi-colored bed sheet. (Tr. IV, 17-18.) He found no positive signs of seminal fluid in the samples contained in the rape kit. (Tr. IV, 20.) Hoskins explained that there are a variety of reasons why he would not find semen even if penetration had occurred, e.g., use of a condom, no ejaculation occurred during the penetration. (Tr. IV, 21.) Hoskins sent cuttings from the interior crotch panel and sheets for potential DNA testing. (Tr. IV, 18.)

Amelia Proctor testified as an expert in DNA analysis. (Tr. IV, 35.) Before offering her as an expert, the prosecutor examined Proctor regarding her education and experience processing DNA evidence. (Tr. IV, 32-35.) Proctor explained DNA to the jury and the process for DNA

testing. (Tr. IV, 37-39.) Proctor received a sealed envelope containing buccal swab samples from Petitioner, known samples from the victim, a fabric cutting from a multi-colored bed sheet and a fabric cutting from the underwear crotch. (Tr. IV, 36.) Proctor developed the known DNA profiles for Petitioner and the victim. (Tr. IV, 39, 41-42.) Proctor testified that the sample from the bed sheet did not match Petitioner or the victim's DNA profile. (Tr. IV, 39.) However, the sample from the victim's underwear contained a mixture of DNA types consistent with the victim and Petitioner. (Tr. IV, 39-40.) In other words, Proctor found DNA from both Petitioner and the victim on the underwear. (Tr. IV, 40.) Defense counsel cross-examined Proctor regarding whether DNA could be present as the result of mere contact, as opposed to penetration. (Tr. IV, 44-46, 49-50.) Defense counsel further questioned Proctor regarding the semen stain on the bed sheet, which did not match Petitioner's or the victim's DNA. (Tr. IV, 48.)

    Petitioner cannot establish that counsel's performance with regard to the DNA evidence fell below an objective standard of reasonableness. Contrary to Petitioner's assertion, the prosecutor established a chain of custody for the DNA evidence and laid a foundation for the qualification of her DNA expert. Petitioner does not specifically allege how the foundation for the admission of the DNA evidence was deficient. Furthermore, Petitioner's allegation that the DNA analysis was not properly conducted is wholly speculative and unsupported. Petitioner does not offer any evidence whatsoever that would call into question the DNA testing method or results. In light of the record in this case, there is no apparent ground upon which defense counsel could have challenged the admission of the DNA evidence. Moreover, counsel conducted a thoughtful cross-examination and attempted to elicit testimony that would support the defense theory that there was insufficient evidence to establish that penetration occurred. Because Petitioner cannot meet the first

requirement of *Strickland*, the Court need not address prejudice. *Strickland*, 466 U.S. at 697; *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004). Accordingly, Petitioner's claim of ineffective assistance of counsel is without merit.

### Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied.

Dated: March 10, 2010 /s/ Joseph G. Scoville
United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).